*1188 OPINION.
Turner:
In section 115 (c) of the Revenue Act of 1928,[1] it is provided that amounts distributed in complete liquidation of a corporation are to be treated as in full payment in exchange for the stock of the corporation liquidated and the gain or loss to the dis-tributee resulting from such liquidation is to be determined under section 111. In section 111 (a)[2] it is provided, subject to certain exceptions not here pertinent, that the loss from a sale or other disposition of property is the excess of the basis provided in section 118 over the amount realized upon such sale or disposition. The amount realized by the petitioner upon the liquidation of the Mechanics Securities Corporation amounted to $444,816.94 and is not in dispute. The parties are in disagreement, however, as to the basis for determining the loss, if any, sustained.
Section 113 (a)[3] of the act provides in part that “the basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1918, shall be the cost of such property.” That section contains numerous exceptions to the general rule just stated, but neither party contends that any of the exceptions are applicable here.
The shares of Mechanics Securities Corporation stock were acquired upon issuance by petitioner of 100,000 shares of its stock and, while the stock so issued had no cost to and represented no outlay on the part of petitioner, it has been held and may be regarded as settled that the cost to a corporation of property acquired through the issuance of its capital stock is the fair market value of such stock at the time of issue. Pierce Oil Corporation, 32 B. T. A. 403; Ida I. McKinney, 32 B. T. A. 450; MacCallum Gauge Co., 32 B. T. A. 544; and Seymour Manufacturing Co., 19 B. T. A. 1280.
The petitioner carried the stock of the Mechanics Securities Corporation on its books at $500,000, and upon liquidation of that corporation entered therein a loss of $55,183.06. In making its return for *1189 1928, however, a deduction of $4,307,006.58 was claimed as the amount of the loss sustained, the basis for the claim being that the 100,000 shares of petitioner’s stock issued for the stock of the Mechanics Securities Corporation had ai the time of issue a fair market value of $4,751,883.52. In the petition it is alleged that the fair market value of the stock in question was, at the time of issue, $8,280,549.90, but on brief the claim now is that the fair market value of the said stock was not less than $5,270,545.94 and that that amount constitutes the proper basis, under section 113 (a), supra, for computing petitioner’s loss.
The parties stipulated that during the period from April 10, 1926, to December 27, 1927, when the issuance of petitioner’s 100,000 shares had been completed and all of the shares of the Mechanics Securities Corporation stock had been received, the excess of petitioner’s assets over liabilities Avas at no time less than $21,082,183.75. The minimum amount of $5,270,545.94 now claimed as the fair market value of the 100,000 shares of petitioner’s stock here under consideration was arrived at by prorating the above amount of net assets to the entire 400,000 shares of petitioner’s authorized capital stock, including the 100,000 shares with which we are concerned. In support of the value claimed petitioner points to its earnings record and to the fact that during the period between April 3, 1926, and June 26 of the same year, when 95,493 of the 100,000 shares Avere issued, the quoted bids for units composed of one share of petitioner’s stock and one share of Chase Bank stock ranged from $403 to $435 per unit. Petitioner also relies on the ansAvers given by one of its witnesses called as an expert, who testified that in his opinion the stock of the corporation described in a hypothetical question propounded by petitioner’s counsel, and obviously intended to be comparable to petitioner, had a fair market value on the assumed date ranging between $50 and $100 per share.
It is the position of the respondent, however, that, since petitioner Avas at no time free to offer the stock in question on the open market but was restricted in the use of said shares so that it could receive upon issuance only the stock of the Mechanics Securities Corporation, the fair market value of petitioner’s shares was necessarily limited to $500,000, the accepted value of the property received, and that the loss on liquidation of the Mechanics Securities Corporation could under no circumstances exceed the sum of $55,183.06 which was allowed in the notice of deficiency.
The petitioner does not make the broad contention that under no circumstances may the value of property received by a corporation through the issuance of its stock be considered in determining the fair market value of the stock so issued, but, relying particularly on language appearing in Pierce Oil Corporation, supra, and Mac- *1190 Callum Gauge Co., supra, contends that in cases where the issuing corporation already has other property and other shares outstanding, the fair market value of the stock issued may not be measured by the value of the property received, and, with reference to the instant case, that “the stock of Mechanics Securities Corporation constituted but a small portion of all the assets of Petitioner, and could not be the measure of the value of any part of Petitioner’s stock.”
Petitioner distinguishes Ida I. McKinney, supra; Hazeltine Corporation, 32 B. T. A. 4; Planters' Operating Co. v. Commissioner, 55 Fed. (2d) 583; and Penney & Long, Inc. v. Commissioner, 39 Fed. (2d) 849, from the instant case, pointing out that in those cases the value of the property received was recognized as the best evidence of the fair market value of the stock issued, because all of the stock of the issuing corporation was issued for the property and no other evidence of the fair market value of the stock was available. While those cases may properly be limited to the proposition stated, none of them contains any pronouncement to the effect that the fair market value of the property received under other circumstances upon the issuance of corporate stock is to be disregarded in determining the fair market value of the stock so issued. Nor do those cases contain any pronouncement to the effect that under no circumstances other than those stated may the fair market value of the property received by a corporation in exchange for its stock be found to be the best evidence of the fair market value of the stock exchanged. It is true Pierce Oil Corporation, supra, did contain the following language, quoted by petitioner in its brief:
Although it has been held that where a corporation issues all its shares for property, the value of the shares is measured by the value of the property, this is merely because the value of the property received is the only available measure of the cost. Obviously it has no application where many shares were already outstanding representing other property and such shares have a determinable value.
The petitioner did not quote the next succeeding "sentence, however, which reads “What the value is in any case is to be determined by evidence and a formula is only recognized at law as a makeweight or as a last resort.” If therefore it appears from the record that the value of the property received, upon the issuance by a corporation of certain of its shares of stock, is the best evidence of the fair market value of those shares at the time of issue, that evidence should be applied and the fair market value of the shares of stock issued determined accordingly, even though at the time of issuance the corporation already owned substantial property of value and had other shares of stock outstanding.
As we have previously pointed out, the 100,000 shares of petitioner’s stock with which we are concerned had no cost to petitioner *1191 and represented no outlay on its part, and so long as those shares remained unissued they imparted to no one the right to participate in the corporate profits, to vote the said shares in any corporate meeting, or to share in the corporate assets on liquidation. Before such rights could arise, those shares must have been issued and outstanding. Accordingly, the only value such shares could have in the hands of petitioner before or at the time of issue was the value of the use to which they could be put, or, in other words, the value of such shares is to be measured by the amount of money or the value of the property which might reasonably be expected upon their disposition. According to the respondent, the use of the shares in the instant case was limited and restricted to issuance for the stock of the Mechanics Securities Corporation, a fact which petitioner contends is unimportant and should be disregarded. The substance of petitioner’s argument is to be found in the following quotation from its brief:
* * * Petitioner Rad limited itself to such consideration by contract. But that fact is unimportant. Either the corporation agrees to exchange its stock for property or it makes such an exchange without an agreement. In either case the result is the same. The only thing it receives for its stock is the property contracted for or actually received. In the one case, it limits itself by a contract; in the other, by an established fact.
The cost of what is received is the value of what is given up therefor. The cost of what is received is not determined by the value of what is received. Where a corporation issues stock for property, the value of the stock is determined, under the decisions of the Board and of the courts, not by the value of the property received, but by reference to the market or intrinsic value of the stock given up, taking into account, among other things, all the assets and all the liabilities of the corporation * * *. Of course, if a corporation issues all its stock at the one time for property, the value of such property may be the only measure of the value of the stock, but this is not the instant case. In this case, the stock of Mechanics Securities Corporation constituted but a small portion of all the assets of Petitioner, and could not be the measure of the value of any part of Petitioner’s stock. * * *.
To say, therefore, that, * * * the fair market value of the 100,000 shares of stock of Petitioner could not be in excess of the value of the shares of stock of Mechanics Securities Corporation is to assert that, in every ease where a corporation issues its shares of stoclc in exchange for property, the foto marlcet value of its shares of stoclc is to he determined hy the value of the property received, and that all prior determinations of the Board and the courts as to the manner in which the fair market value of such shares is to be determined were erroneous and are overruled.
The above statement discloses a failure on the part of petitioner’s counsel to consider all of the facts in the instant case and a tendency to dismiss certain significant facts as unimportant. We are not here dealing with a corporation which, free of limitations and restrictions, was issuing previously authorized shares of stock on the open market for cash or property. In the absence of restrictions *1192 and limitations, a corporation is in a position to seek tire best price obtainable and the price which a willing buyer, not required to buy, might reasonably be expected to pay would undoubtedly be determined with due regard to the assets, liabilities, earnings, records, and future business prospects of the corporation and to the price at which other shares of the corporation might be selling on the market, and if under such circumstances the directors exercised bad judgment in disposing of the stock, or, for some purpose in respect of which they might still exercise discretion, issued the shares for property having a value much lower than the price which could have been obtained, it could not reasonably be said that the cost of the property received, or in other words the fair market value of the stock issued, was limited to the value of the property received. In the instant case the use of the shares in question had been fixed and determined prior to their authorization and the stockholders in making the authorization tagged and earmarked them for the use to which they were put. At no time after authorization was the petitioner free to offer any of the shares to the public and at all times from and after February 11, 1926, more than one month before their authorization, the use of those shares was limited and restricted to issuance in accordance with the terms of the exchange agreement and in connection with the consolidation of the Mechanics Bank and Chase Bank. The said shares were definitely tied to the Chase Bank stock issued to the shareholders of Mechanics Bank by petitioner’s certificate of incorporation, as amended, which prohibited the issuance of the shares “unless, as a part of the terms of or consideration for their issuance” they should be made available for deposit with a similar number of shares of Chase Bank. By reason of the restrictions outlined, nothing could be acquired through the issuance of petitioner’s shares which was outside the plan of consolidation, and the petitioner was precluded from seeking the price which would otherwise have been obtainable if the elements and factors which normally control the selling price of stock could have attached to the shares under consideration. The fair market value contended for by petitioner may be a fair indication of the price that could have been expected if the shares had been free of restrictions. There were restrictions, however, and if they were such as to affect the fair market value of the stock so issued those restrictions should be given such weight in determining its fair market value as sound judgment indicates. In this connection petitioner’s own witness, called as an expert, testified on cross-examination that where the shares of stock of a corporation may not be offered for sale on the open market but must be used only in exchange for specifically designated property, the shares of stock, in his opinion, would have a fair market value equal to and not in excess of the value of the *1193 property for which they must be issued. Cf. Helvering v. Salvage, 297 U. S. 106; Lomb v. Sugden, 82 Fed. (2d) 166.
We do not consider it necessary, however, to determine whether or not the restrictions in the instant case were such as to limit the fair market value of the stock at the time of issuance to the value of the Mechanics Securities stock received, for in the view we take of the transaction the cost of the Mechanics Security stock to the petitioner was not in excess of $500,000 even though it be assumed and conceded that the fair market value of the 100,000 shares of petitioner’s stock had a fair market value of $5,270,545.94 at the time of issue,as petitioner contends. Both parties have proceeded with the hearing under the assumption that the petitioner issued the said shares solely for all of the authorized capital stock of the Mechanics Securities Corporation, and if that assumption is correct, the total amount determined as the fair market value of the said 100,000 shares of petitioner represents the cost of the Mechanics Securities stock. In our opinion, however, the facts of record indicate that the assumption is not sound but that the consideration for the issuance of petitioner’s 100,000 shares was not limited to the Mechanics Securities stock actually received, but included other property as well, and the cost to petitioner of the Mechanics Securities stock is only such part of the fair market value of the said 100,000 shares as is properly allocable thereto.
While it is true that the only property actually received by and transferred to petitioner upon the issuance of the said shares of its stock was the stock of Mechanics Securities Corporation and the literal wording of the exchange agreement, standing alone, supports the assumption that petitioner’s stock was issued solely for Mechanics Securities stock, the results must nevertheless be determined with due reference to all circumstances surrounding the issuance of said shares, and the controlling effect of the merger of the Mechanics Bank with the Chase Bank upon the issuance by petitioner of its shares of stock to the shareholders of the Mechanics Bank may not be ignored. In the first place, it is obvious that the stockholders of the Mechanics Bank on the one hand and the stockholders of petitioner and Chase Bank on the other were substantial and real parties in interest, and the transaction here under consideration was designed not only to require the transfer of assets between the corporations involved but also to effect a complete readjustment of stock-holdings and stock interests, between the two groups of stockholders, in the assets previously held and the businesses previously conducted by the Mechanics Bank, the Chase Bank, and the petitioner. The result desired and accomplished was that upon transfer of the assets and business of the Mechanics Bank to the Chase Bank and the petitioner the stock of the Chase Bank and the petitioner should be *1194 Reid 75 percent by their existing stockholders and 25 percent by the stockholders of the Mechanics Bank.
With the above objective in mind, each of the corporations, namely, the petitioner, the Chase Bank, and the Mechanics Bank, submitted to its stockholders for consideration and approval a proposal whereby all of the assets of the Mechanics Bank, except assets having an aggregate value of $500,000, should be transferred to the Chase Bank for 25 percent of the stock of Chase Bank, which stock was to be issued to the stockholders of Mechanics Bank. The excepted assets were to go to a new corporation for all of its authorized stock, which stock was to be transferred to petitioner and petitioner in turn was to issue 100,000, or 25 percent, of its authorized shares also to the Mechanics Bank shareholders. While the agreement of consolidation and the exchange agreement required the approval or joining of only two-thirds of the Mechanics Bank shareholders, the record indicates that all of the shareholders voted approval or later joined in the proposal, as did all of the shareholders of Chase Bank and petitioner.
The Mechanics Securities Corporation was accordingly organized and its entire 100,000 shares of authorized capital stock were issued pro rata to the shareholders of the Mechanics Bank, subject to the provisions of the exchange agreement to the effect that the stock so received should be exchanged for 100,000 shares of petitioner’s stock. By the terms of the exchange agreement, however, petitioner was bound to authorize and issue its said 100,000 shares of stock for the stock of the Mechanics Securities Corporation only if the consolidation of the Chase Bank and Mechanics Bank should be effected as provided in the agreement of consolidation. It is also significant to note that the Mechanics Bank, in calling the meeting of its stockholders to consider and act upon the merger with the Chase Bank and related and dependent transactions, urged approval of the consolidation of the two banks under the proposed plan and obviously as an inducement to such approval pointed out that the shareholders of the Mechanics Bank would be given the opportunity to acquire “without additional cost, one share * * * of Chase Securities Corporation for each share of stock of the consolidated bank allotted to them ”, and further that the stock of petitioner would “ have a substantial Avalué.” It was explained that the acquisition of petitioner’s stock was to be accomplished through the use, as previously outlined, of $500,000 of Mechanics Bank assets to be withheld under the agreement of consolidation for that purpose. From the above it is at once apparent that the consolidation of the Mechanics Bank with the Chase Bank was part of the consideration for the agreement on petitioner’s part to issue 100,000 of its shares to the stockholders of *1195 the Mechanics Bank and the receipt of those shares by the Mechanics Bank stockholders was part of the consideration for their approval of the merger of that bank with the Chase Bank.
Even though petitioner was restricted as to the use of the said 100,000 of its shares of stock here under consideration and those restrictions may have had the effect of limiting their fair market value, it is nevertheless true that those shares, when issued, represented 25 percent of the total authorized and outstanding stock of a prosperous corporation, a corporation which owned net assets amounting to at least $21,082,183.76 and for each of the five years preceding had net profits in excess of $1,500,000 and for each of the four preceding years had paid dividends amounting to $800,000. That petitioner would bind and restrict itself to the authorization of additional shares and upon such authorization to the issuance of the shares so authorized to the extent of 25 percent of its total authorized shares and receive for itself property having a value of only $500,000 is, to use language of petitioner’s counsel, “obviously to state something that requires an explanation.” The explanation offered was that, to maintain the joint ownership of petitioner’s stock with the Chase Bank stock, the terms of exchange had to be made “attractive” so as to induce the shareholders of the Mechanics Bank to become shareholders of petitioner at the same time they became stockholders of the Chase Bank.
In our opinion, however, the real basis for the terms on which petitioner’s shares were issued goes much deeper than a mere desirability of maintaining joint and equal ownership of the stock of the Chase Bank and petitioner. The ownership of petitioner’s shares and the maintenance of such joint and equal ownership obviously had been both desirable and profitable to the shareholders of the Chase Bank and there is nothing to indicate that they would be less attractive to the shareholders of the Mechanics Bank. If the maintenance of such joint and equal ownership had been the controlling factor the most logical method of accomplishing that result would have been through the proration of the assets of the Mechanics Bank to petitioner and the Chase Bank so that the Mechanics Bank would furnish the same percentage of capital to each corporation and through the issuance of stock to the Mechanics Bank stockholders on the basis of the percentage so determined. For reasons best known to themselves, however, the parties determined that assets of the Mechanics Bank totaling $26,017,618.90, according to entries on the books of the consolidated bank, should be acquired by the Chase Bank, leaving only the excepted assets of $500,000 for petitioner. As a result of this arrangement and as disclosed by the table in the *1196 margin [4] we find that the Mechanics Bank was furnishing approximately 33 percent of the net assets of the consolidated bank and its stockholders were receiving only 25 percent of the stock of such bank while the Chase Bank was furnishing only slightly more than 67 percent of the net assets and its stockholders were receiving 75 percent of the stock. In this connection it is also significant to note that while the stockholders of the Mechanics Bank were supplying approximately 33 percent of the net assets of the consolidated bank and were receiving only 25 percent of its stock and were supplying only slightly more than 2 percent of the net assets of petitioner for which they were likewise receiving 25 percent of its stock, they were nevertheless supplying only slightly more than 26 percent of the net assets of the consolidated bank and petitioner, considered jointly, and petitioner and the Chase Bank were furnishing approximately 74 percent of the aggregate net assets of the two corporations.[5]
We have previously noted the fact that the petitioner was bound to issue its stock to the shareholders of the Mechanics Bank only upon the condition that the consolidation of that bank with the Chase Bank should be effected and that one of the inducements to the shareholders of the Mechanics Bank for approving the proposed consolidation whereby they were to receive 25 percent of the *1197 shares of the consolidated bank while furnishing approximately 33 percent of the assets of such bank, was that the said shareholders were to receive “without additional cost” 25 percent of the stock of the petitioner. In the light of such facts, the logical conclusion is that petitioner’s said 100,000 shares of stock were not issued solely for the stock of the Mechanics Securities Corporation, but in addition to such stock acquired for itself, petitioner acquired for the benefit of its shareholders, who were also shareholders of the Chase Bank, additional assets for that bank. Analysis of the figures shown by the tables in the margin indicates that the property so acquired by the petitioner upon the issuance of its said shares corresponds in value to the fair market value claimed by petitioner for the stock issued. It does not follow, however, that a finding that petitioner’s shares had a fair market value equal to the amount contended for leads to a finding that the cost to petitioner of Mechanics Securities Corporation stock exceeded $500,000, as found and determined by the respondent. The petitioner’s claim is that the 100,000 shares of stock in question had a fair market value of $5,270,545.94 and the percentages set forth above indicate that the value of the Mechanics Securities stock and other assets acquired by petitioner on behalf of its stockholders as additional capital for the Chase Bank approximated the same amount. In the light of these facts, we conclude that the portion of the fair market value of petitioner’s said shares which may be determined as the cost of the Mechanics Securities stock was not in excess of $500,000, and the loss to petitioner on liquidation of the Mechanics Securities Corporation in the amount allowed by respondent in his determination of the deficiency herein is approved. Cf. Holmby Corporation, 28 B. T. A. 1092.
At the conclusion of the hearing, the respondent requested permission to file an amended answer, claiming an additional deficiency of $6,621.97. The basis for this claim is neither definitely nor clearly stated. It appears, however, that there is some thought that the Mechanics Securities Corporation, similar to the Averill corporation in Gregory v. Helvering, 293 U. S. 465, was not organized for a business purpose and for that reason may not be recognized for income tax purposes, with the result that under the statute no recognizable loss was sustained upon its liquidation. If that is the basis of the claim for additional deficiency, the claim must be denied. In the case of such a claim, the burden of proof is upon the respondent, and no proof whatever was offered to show that the Mechanics Securities Corporation was not intended as a business corporation or that it did not in fact transact any business during the two years of its existence. The amended answer makes some reference to the Mechanics Securities Corporation as being only a conduit through *1198 which the shares of the petitioner were transferred to the Bankers Trust Co. for the benefit of the stockholders of the Mechanics Bank. The purpose of that statement obviously can not be determined, since the statement is inaccurate on its face. The Mechanics Securities Corporation never at any time, so far as the records show, owned or held any of the stock of the petitioner and could not therefore have been a conduit through which those shares were passed to the Bankers Trust Co. for the benefit of the shareholders of the Mechanics Bank. The claim for additional deficiency accordingly is denied.
Reviewed by the Board.

Decision will be entered wider Rule 50.

Smith did not participate in the consideration of or decision in this report.

 SEC. 115. DISTRIBUTIONS BY CORPORATIONS.
*******
(e) Distributions in liquidation. — Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *

 SEC. 111. DETERMINATION OP AMOUNT OP GAIN OR LOSS.
(a) Computation of gain or loss. — Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized,

 SEC. 113. BASIS POR DETERMINING GAIN OR LOSS.
(a) Property acquired after Pebruary 28, 1913. — The basis for determining the gain or loss from the sale or other disposition of property acquired after Pebruary 28, 1913, shall be the cost of such property; * * *

 See the following table :
[[Image here]]

 See the following table:
[[Image here]]